IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM LOFTUS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action File No. |
| v. | CLASS ACTION COMPLAINT |
| SIGNPOST INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

## NATURE OF ACTION

1. This case involves a telemarketing campaign by SignPost Inc. ("SignPost") to market their services in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2. In violation of the TCPA, SignPost called the Plaintiff using an automatic telephone dialing system ("ATDS") to promote their goods and services.

3. The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of proposed nationwide Class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district and because Defendant resides in this district.

## PARTIES

7. Plaintiff William Loftus is and at all times mentioned herein was, an individual who resides in California.

8. Defendant SignPost, Inc. is a New York corporation with its principal place of business at 275 7th Avenue, Suite 1701, New York, NY 10001.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

The TCPA Prohibits Automated Telemarketing Calls

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

15. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

16. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

17. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

18. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

## FACTUAL ALLEGATIONS

19. SignPost offers customer relationship management software for businesses.

20. To generate new customers, SignPost relies on telemarketing.

21. One of SignPost's strategies for telemarketing involves the use of automatic telephone dialing system to solicit business.

22. This includes using a pre-loaded list of telephone numbers.

23. The list of telephone numbers is then automatically dialed in sequence.

24. When an individual answers the phone, they are then transferred to a customer service representative of the Defendant.

25. Defendant use these technologies because they allow Defendant to deliver thousands of telemarketing messages in a short period of time, but its sales representatives only talk to individuals who affirmatively respond.

26. Through this method, Defendant shift the burden of wasted time to the consumers it calls with unsolicited messages.

27. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

28. The Plaintiff's telephone number, (805) 405-XXXX, is registered to a wireless, cellular telephone service.

29. On July 3, 2019, the Plaintiff received automated calls from the Defendant.

30. When Plaintiff answered one of the calls, there was a lengthy pause and a click followed by silence before a live person came on the line.

31. The Caller ID number for the call was (805) 779-4025.

32. This Caller ID number was "spoofed," as that number is not in service.

33. In other words, the Defendant manipulated the dialing system to use a Caller ID number that was local to the Plaintiff in hopes that he would answer.

34. This is also consistent with the use of an ATDS, as it takes computerized dialing software to manipulate a Caller ID.

35. The dialing system has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

36. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

37. On information and belief, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

38. The dialing system can do this by inputting a straightforward computer command.

39. Following that command, the dialing system will sequentially dial numbers.

40. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

41. This would be done without any human intervention or further effort.

42. These facts, as well as the generic content of the call, which was not personalized to Mr. Loftus, indicate that the calls were made with an ATDS as defined in 47 U.S.C. § 227(a)(1).

43. Other individuals have complained about receiving spam calls from this number, including complaints about calls from SignPost:

> "Telemarketer"
> "Sales Call"
> "SignPost Telemarketing (Call centre) reported by Eva   Answered the phone, they asked "can you hear me" I said yes, but later I thought about the scam that went around about that, she then proceeded to ask me if I had a minute for her to talk to me about why she called. I said if its a sales call I'm not interested, she said it's only a sales call if you want to buy something from me. I then hung up."

*See* https://www.shouldianswer.com/phone-number/8057794025 (Last Visited July 31, 2019).

44. During the call, Plaintiff learned that the purpose of the call was to sell SignPost's services.

45. Confirming that fact, the Defendant sent the Plaintiff an e-mail regarding their services.

46. The e-mail came from "kcollins@signpost.com".

47. This is the e-mail address for Katie Collins, the individual who made the automated call to the Plaintiff.

48. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, their time was wasted with unsolicited communications, and their privacy was improperly invaded.

49. Moreover, these calls injured the Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of the Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

50. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

51. Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) or (3).

52. Plaintiff proposes the following class definition, subject to amendment as appropriate:

**Automated Telemarketing Call Class**

All persons within the United States to whom: (a) Defendant or a third party acting on their behalf made one or more calls using the same or similar dialing system used to call the Plaintiff; (b) to a cellular telephone number; (c) within the four years before the date of the filing of this Complaint.

53. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

54. The Class defined above is identifiable through phone records and phone number databases and Defendant's internal records.

55. The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

56. Plaintiff is a member of the proposed Class.

57. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

- Whether Defendant placed calls using an ATDS;

- Whether Defendant placed calls without obtaining the recipients' prior express written consent for the call;

- Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant' actions;

- Whether the actions of the Defendant were knowing or willful.

58. Plaintiff's claims are typical of the claims of members of the Class. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

59. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

60. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

61. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.

62. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

63. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

64. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## CAUSES OF ACTION

### FIRST COUNT

**AUTOMATED CALL VIOLATIONS (INCLUDING BUT NOT LIMITED TO KNOWING AND/OR WILLFUL VIOLATIONS) OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

65. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

66. The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the TCPA, concerning calls made through an "automatic telephone dialing

ssytem" including but not limited to 47 U.S.C. §§ 227(b)(1)(A)(iii); 47 C.F.R. §§ 64.1200(a)(1)(iii) & 64.1200(a)(2).

67. As a result of the Defendant's violations, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, or up to $1,500 in statutory damages for each willfully or knowingly made violation, pursuant to 47 U.S.C. § 227(b)(3).

68. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendant from engaging in the use of an automatic telephone dialing system.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendant:

A. Injunctive relief prohibiting Defendant from engaging in the use of an automatic telephone dialing system;

B. As a result of Defendant' statutory violations of 47 U.S.C. § 227(b), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every violation of the TCPA;

C. As a result of the Defendant' willful and/or knowing violations of the TCPA, Plaintiff seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class as permitted by law;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Class as the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F. Such other relief as the Court deems just and proper.

Respectfully Submitted,

PLAINTIFF, individually and
on behalf of others similarly situated,

By:

*/s/ Anthony I. Paronich*
Anthony I. Paronich (PHV Pending)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com