**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

WILLIAM LOFTUS, individually and on behalf of all others similarly situated,

                Plaintiff,

     v.

SIGNPOST INC.,

                Defendant.

</td><td>

Case No. 1:19-cv-07984-JGK

**DEFENDANT SIGNPOST, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY**

</td></tr>
</table>

## TABLE OF CONTENTS

I.    Introduction .......................................................................................................... 1

II.   Procedural History ............................................................................................... 2

III.  Legal Argument .................................................................................................... 3

    A.   The Definition of ATDS Is Unsettled Nationwide and Within the Second
        Circuit, Though an Emerging Majority Adheres to the Statutory
        Definition. .................................................................................................... 3

    B.   The Second Circuit Will Imminently Issue a Ruling Defining the Scope of
        an ATDS. ...................................................................................................... 6

    C.   The FCC Will Also Issue a Ruling Defining the Scope of an ATDS. ................... 8

    D.   The Forthcoming Second Circuit and FCC Rulings Defining the Scope of
        an ATDS Could Extinguish Plaintiff's Claims and Dispose of this Action. ........ 10

    E.   This Action Should Be Stayed Pending the Forthcoming Rulings on the
        Central and Dispositive ATDS Issue by Either the Second Circuit or FCC......... 11

    F.   Plaintiff's New Internal Do-Not-Call "Claim" Does Not Change this
        Analysis........................................................................................................ 15

IV.   CONCLUSION...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ........................................................................1, 3, 4

*Acton v. Intellectual Capital Mgmt., Inc.*,
    No. 15-CV-4004, 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) ...........................12

*Adams v. Safe Home Sec. Inc.*,
    No. 3:18-CV-03098-M, 2019 WL 3428776 (N.D. Tex. July 30, 2019) ...............4, 5

*Allan v. Pennsylvania Higher Educ. Assistance Agency*,
    No. 2:14-CV-54, 2019 WL 3890214 (W.D. Mich. Aug. 19, 2019) ........................4

*Braver v. NorthStar Alarm Serv., LLC*,
    No., 17-0383, 2019 WL 3208651 (W.D. Okla. July 16, 2019) ............................15

*Buhr v. ADT Inc.*,
    No. 9:18-cv-80605-RLR ..............................................................................10, 12

*Burdge v. Ass'n Health Care Mgmt. Inc.*,
    No. 1:10-cv-00100, 2011 WL 379159 (S.D. Ohio Feb. 2, 2011) ..........................15

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*,
    630 F. Supp. 2d 295 (S.D.N.Y. 2009).................................................................15

*Clinton v. Jones*,
    520 U.S. 681 (1997).........................................................................................11

*Compressor Eng'g Corp. v. Thomas*,
    No. 10-10059, 2016 WL 438963 (E.D. Mich. Feb. 3, 2016)................................13

*Cordoba v. DIRECTV, LLC*,
    No. 18-12077, 2019 WL 6044305 (11th Cir. Nov. 15, 2019) ...............................16

*DeNova v. Owen Loan Servs.*,
    No. 8:17-cv-2204, 2019 WL 4635552 (M.D. Fla. Sept. 24, 2019)..........................5

*DiStasio v. Edible Arrangements, LLC*,
    No. 3:16-cv-538-DJS (Dist. Conn. March 23, 2019)...................................9, 12, 13

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018)..............................................................................5

*Drake v. Synchrony Bank*,
   No. 1:19-cv-02134-CCB (D. Md. Oct. 17, 2019) ..................................................12

*Duran v. La Boom Disco, Inc.*,
   369 F. Supp. 3d 476 (E.D.N.Y. 2019) .............................................................4, 6, 7

*Ellis v. Tribune Television Co.*,
   443 F.3d 71 (2d Cir. 2006)...............................................................................12

*Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. and Annuity Corp.*,
   No. 15-CV-4767, 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015)............................12

*Folkerts v. Seterus, Inc.*,
   No. 17 C 4171, 2019 WL 1227790 (N.D. Ill. Mar. 15, 2019) ..................................4

*Gadelhak v. AT&T Servs., Inc.*,
   No. 17-CV-01559, 2019 WL 1429346 (N.D. Ill. Mar. 29, 2019)...............................4

*Gadelhak v. AT&T Servs., Inc.*,
   No. 19-1738 (7th Cir. Sept. 27, 2019) ...............................................................4

*Gerrard v. Acara Sols. Inc.*,
   No. 18-CV-1041, 2019 WL 2647758 (W.D.N.Y. June 27, 2019)...............................4

*Glasser v. Hilton Grand Vacations Co., LLC*,
   No. 8:16-cv-00952-JDW-AAS (M.D. Fla. Sept. 25, 2018)......................................4

*Glasser v. Hilton Grand Vacations Company, LLC*,
   No. 18-14499 (11th Cir. November 5, 2019)........................................................4

*Gonzalez v. HOSOPO Corp.*,
   371 F. Supp. 3d 26 (D. Mass. 2019) .................................................................4

*Jiminez v. Credit One Bank, N.A.*,
   No. 1:17-CV-2844-LTS-JLC, 2019 WL 1409425 (S.D.N.Y. Mar. 28, 2019) ..........4

*Johnson v. Yahoo!, Inc.*,
   346 F. Supp. 3d 1159 (N.D. Ill. 2018) ...............................................................6

*Kappel v. Comfort*,
   914 F. Supp. 1056 (S.D.N.Y. 1996).................................................................11

*King v. Time Warner Cable Inc.*,
   894 F.3d 473 (2d Cir. 2018)............................................................................6

*Kloth-Zanard v. Bank of Am.*,
   No. 19-2043 (2d Cir. Oct. 21, 2019)...............................................................4, 7

iii

*Kloth-Zanard v. Bank of Am.*,
   No. 3:15-CV-1208-MPS, 2019 WL 1922070 (D. Conn. Apr. 30, 2019) ............................4, 7

*La Boom Disco, Inc. v. Duran*,
   No. 19-600 (2d Cir. Sept. 11, 2019) ..................................................................1, 5, 6, 7, 8, 14

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)..........................................................................................................11

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) ........................................................................................5, 6

*McMillion, et al. v. Rash Curtis & Assoc.*,
   No. 4:16-cv-03396-YGR (N.D. Cal. Sept. 9, 2019) ............................................................6

*Mejia v. Time Warner Cable Inc.*,
   No. 15-CV-6445 (JPO), 2017 WL 5513638 (S.D.N.Y. Nov. 17, 2017) ...............................16

*Mey v. Venture Data, LLC, et al.*,
   No. 5:14-cv-00123-JPB-JPM (N.D.W.V. Dec. 15, 2016) ......................................................10

*Nuccio v. Duve*,
   No. 7:13-CV-1556 MAD-TWD, 2015 WL 1189617 (N.D.N.Y. Mar. 16,
   2015) ..................................................................................................................................14

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
   No. CIV.A. 12-2132-FLW, 2014 WL 413534 (D.N.J. Feb. 4, 2014)....................................13

*Range v. 480-486 Broadway, LLC*,
   810 F.3d 108 (2d Cir. 2015)..............................................................................................11

*Reynolds v. Time Warner Cable, Inc.*,
   No. 16-CV-6165W, 2017 WL 362025 (W.D.N.Y. Jan. 25, 2017) .........................................17

*Richardson v. Verde Energy USA, Inc.*,
   354 F. Supp. 3d 639 (E.D. Pa. 2018) ....................................................................................6

*Roark v. Credit One Bank, N.A.*,
   No. CV 16-173, 2018 WL 5921652 (D. Minn. Nov. 13, 2018) ...............................................5

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
   No. 17-CV-5916-AJN, 2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018) ..................................14

*Ruggieri v. Boehringer Ingelheim Pharm., Inc.*,
   No. 06-CV-1985, 2012 WL 1521850 (D. Conn. Feb. 24, 2012) ...........................................11

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
  *Declaratory Ruling and Order,*
  18 FCC Rcd. 14014 (2003)....................................................................3, 7

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act*
  *of 1991, Declaratory Ruling and Order,*
  23 FCC Rcd. 559 (2008)..........................................................................3

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, et*
  *al., Declaratory Ruling and Order,*
  30 FCC Rcd. 7961 (2015).......................................................................3, 9

*Sikhs for Justice v. Nath,*
  893 F. Supp. 2d 598 (S.D.N.Y. 2012)...................................................11

*Singer v. Las Vegas Athletic Clubs,*
  376 F. Supp. 3d 1062 (D. Nev. 2019).....................................................4

*Smith v. Navient Sols., LLC,*
  No. 3:17-191, 2019 WL 3574248 (W.D. Pa. Aug. 6, 2019)....................5

*Snow v. Gen. Elec. Co.,*
  No. 19-1724 (4th Cir. November 1, 2019)...............................................4

*Snow v. Gen. Elec. Co.,*
  No. 5:18-CV-511-FL, 2019 WL 2500407 (E.D.N.C. June 14, 2019) ...................4, 5

*Telstar Res. Grp., Inc. v. MCI, Inc.,*
  476 F. Supp. 2d 261 (S.D.N.Y. 2007)..................................................12, 6

*Thompson-Harbach v. USAA Fed. Sav. Bank,*
  359 F. Supp. 3d 606 (N.D. Iowa 2019)...............................................4, 5

*Wahl v. Stellar Recovery, Inc.,*
  No. 14-CV-6002-FPG, 2014 WL 4678043 (W.D.N.Y. Sept. 18, 2014) ..........10, 12

*Wilson v. PH Phase One Operations L.P.,*
  No. 18-3285-DKC, 2019 WL 4735483 (D. Md. Sept. 27, 2019) ..........15

## STATUTES

TCPA, 47 U.S.C. § 227...........................................................................1, 3, 15

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(d)(3) & (e) ...........................................................16

D.C. Circuit Decision Curbing Regulatory Overreach (Mar. 16, 2018), available
  at https://apps.fcc.gov/edocs_public/attachmatch/DOC-349765A1.pdf...............8, 9

FCC, DA 18-493, CONSUMER AND GOV'T AFFAIRS BUREAU SEEKS COMMENT ON
  INTERPRETATION OF THE TCPA IN LIGHT OF THE D.C. CIRCUIT'S *ACA INT'L*
  DECISION (May 14, 2018) *available at*
  https://docs.fcc.gov/public/attachments/DA-18-493A1.pdf ......................................................8

*Marks v. Crunch San Diego, LLC* Decision (Oct. 3, 2018) *available at*
  https://docs.fcc.gov/public/attachments/DA-18-1014A1.pdf ...................................................8

Michael O'Rielly, Remarks of FCC Commissioner Michael O'Rielly Before the
  ACA International Washington Insights Conference (May 16, 2019) *available
  at* https://docs.fcc.gov/public/attachments/DOC-357496A1.pdf................................................9

*Press Release*, FCC, Chairman Pai Statement on D.C. Circuit Decision Curbing
  Regulatory Overreach, *available at*
  https://apps.fcc.gov/edocs_public/attachmatch/DOC-349765A1.pdf ..................................8, 9

## I.      INTRODUCTION

To prevail on his claims in this putative class action lawsuit, Plaintiff must prove that Defendant Signpost, Inc. ("Signpost" or "Defendant") used an automatic telephone dialing system ("ATDS"), as defined under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), to place calls to him.  This, of course, hinges on what the proper interpretation of "ATDS" is. Following the D.C. Circuit's seminal decision in *ACA Int'l v. FCC*, 885 F.3d 687, 701 (D.C. Cir. 2018)—which vacated the Federal Communications Commission's ("FCC") overbroad interpretation of ATDS—courts across the country have reached different conclusions on that question.  The Second Circuit, however, has not yet weighed in on this issue.

But clarity within the Second Circuit is imminent.  The Second Circuit is set to answer the question of what type of equipment qualifies as an ATDS in *Kloth-Zanard v. Bank of Am*., No. 19-2043 and *La Boom Disco, Inc. v. Duran*, No. 19-600, where oral argument is set to take place in just days.  While it is uncertain what the Second Circuit will hold in those cases, it will likely affirm the lower courts' grant of summary judgment by joining the emerging majority of courts across the country in ruling that the TCPA means what it says: that equipment must have the capacity to generate and dial random or sequential numbers when used to qualify as an ATDS.

Likewise, the FCC is set to clarify the scope of an ATDS.  Commissioners who dissented from the FCC's now-vacated, overbroad interpretation now make up a majority of the FCC, and those commissioners agree with a literal interpretation of the TCPA.  The FCC has urged courts to wait to issue rulings until the FCC provides guidance per the primary jurisdiction doctrine—lest cases like this contribute to the current "patch work of interpretations" on what "ATDS" means.

If a decision from either the Second Circuit or FCC results in Signpost's system not constituting an ATDS, this lawsuit will end.  And even if the Second Circuit or FCC does not rule in Signpost's favor, the rulings will provide clarity and substantially streamline fact and expert

discovery, eliminate the need for other proceedings (such as briefing and discovery disputes), and encourage settlement discussions.  As a result, a stay would not work to the injustice or hardship of any party and would instead conserve the resources of the Court and the parties.

Accordingly, Signpost respectfully requests this case be stayed pending ATDS decisions by: (a) the FCC; and/or (b) the Second Circuit.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this putative class action alleging violations of the TCPA based on allegations that Signpost "called the Plaintiff using an automatic telephone dialing system."  (Dkt. 1, ¶ 2.)  Specifically, Plaintiff alleges that Signpost uses "a pre-loaded list of telephone numbers," which is then "automatically dialed in sequence."  (Dkt. 1, ¶¶ 22-23; Dkt. 24, ¶¶, 33-34.)  Based on this single claim, Plaintiff seeks to certify a class of persons who, among other things, received calls made using "the same or similar dialing system used to call the Plaintiff."  (Dkt. 1, ¶ 52.) Signpost filed an Answer, denying violating the TCPA or placing any calls via an "automatic telephone dialing system" or ATDS.  (Dkt. 13.)

On November 4, 2019, this Court held a scheduling conference in which it ruled that Signpost could file the instant motion by November 22, 2019 and stayed proceedings pending resolution of this motion.  (Dkt. 25.)  Plaintiff then amended his Complaint by adding an internal do-not-call "claim," alleging that Signpost made calls without "a written policy pertaining to 'do-not-call' requests," training its personnel on such policy, or recording such requests.  (Dkt. 26, ¶¶ 99-102.)  Plaintiff does not allege that he actually made a do-not-call request or demanded a copy of any such policy.  Pursuant to this Court's Order, Signpost now files this motion to stay pending the forthcoming rulings by the Second Circuit and FCC that will define an ATDS and determine the viability of Plaintiff's action.  (Dkt. 25.)

### III.   LEGAL ARGUMENT

#### A.   The Definition of ATDS Is Unsettled Nationwide and Within the Second Circuit, Though an Emerging Majority Adheres to the Statutory Definition.

Among other things, the TCPA prohibits calling a cellular telephone with an ATDS without the called party's consent.  47 U.S.C. § 227.  An ATDS is defined as "equipment which has the capacity -- to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."  47 U.S.C. § 227(a)(1).  The FCC purported to interpret this statutory definition in various Orders.[1]  But in March 2018, the D.C. Circuit vacated the FCC's interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad.[2]  47 U.S.C. § 227; *ACA Int'l*, 885 F.3d at 701.  This left a vacuum of authority on what qualifies as an ATDS and called into question pre-2018 cases addressing that issue, given that most of those cases were decided based on the now-vacated FCC guidance.

In the vacuum left by *ACA International*, courts across the country have reached inconsistent conclusions on what constitutes an ATDS, disagreeing on two major issues.  First, courts disagree over whether *ACA International* invalidated only the FCC's 2015 Order (which, in part, purported to define "ATDS") or whether it also "invalidated the analogous portions of the

---

[1] *See, e.g.*, *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, et al., Declaratory Ruling and Order*, 30 FCC Rcd. 7961, 7972-73 (2015) ("2015 Order"); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 23 FCC Rcd. 559, 566 (2008) ("2008 Order"); *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 18 FCC Rcd. 14014, 14017 (2003) ("2003 Order").

[2] *ACA Int'l,* 885 F.3d at 702 (holding FCC's 2015 Order's interpretation of ATDS was "unreasonably, and impermissibly, expansive" and that the "Commission reaffirmed its 2003 ruling insofar as that order had found predictive dialers to qualify as ATDSs."); *see also id.* at 702 ("We must therefore set aside the Commission's treatment of those matters," including the "lack of clarity about which functions qualify a device as an autodialer").

2003 and 2008 Orders concerning predictive dialers," and thus whether courts can look to those older FCC orders for guidance as to what constitutes an ATDS. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476, 492 (E.D.N.Y. 2019) (collecting cases). Second, and regardless of the answer to the first question, courts disagree about what functionalities render a calling or messaging system an ATDS.[3] Since *ACA International*, at least twelve district courts have issued seven different conclusions on what constitutes an ATDS, although they are trending toward a more narrow definition that adheres to the language of the statute.[4] And six of those decisions are currently pending circuit court review.[5]

---

[3] *Duran*, 369 F. Supp. 3d at 489; *Gonzalez v. HOSOPO Corp.,* 371 F. Supp. 3d 26, 34 (D. Mass. 2019); *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1072 (D. Nev. 2019); *Kloth-Zanard v. Bank of Am.*, No. 3:15-CV-1208-MPS, 2019 WL 1922070, at *10 (D. Conn. Apr. 30, 2019); *Gadelhak v. AT&T Servs., Inc.*, No. 17-CV-01559, 2019 WL 1429346, at *5 (N.D. Ill. Mar. 29, 2019), *appeal docketed*, No. 19-1738 (7th Cir. Sept. 27, 2019); *Jiminez v. Credit One Bank, N.A.*, No. 1:17-CV-2844-LTS-JLC, 2019 WL 1409425, at *6 (S.D.N.Y. Mar. 28, 2019); *Folkerts v. Seterus, Inc.*, No. 17 C 4171, 2019 WL 1227790, at *6 (N.D. Ill. Mar. 15, 2019).

[4] *See, e.g.*, n.4; *see also Allan v. Pennsylvania Higher Educ. Assistance Agency*, No. 2:14-CV-54, 2019 WL 3890214, at *3 (W.D. Mich. Aug. 19, 2019); *Adams v. Safe Home Sec. Inc.*, No. 3:18-CV-03098-M, 2019 WL 3428776, at *4 (N.D. Tex. July 30, 2019); *Gerrard v. Acara Sols. Inc.*, No. 18-CV-1041, 2019 WL 2647758, at *6-14 (W.D.N.Y. June 27, 2019) (pending review of objection to report and recommendation); *Snow v. Gen. Elec. Co.*, No. 5:18-CV-511-FL, 2019 WL 2500407, at *7 (E.D.N.C. June 14, 2019), *appeal docketed*, No. 19-1724 (4th Cir. Nov. 1, 2019); *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 625 (N.D. Iowa 2019); *Glasser v. Hilton Grand Vacations Co., LLC*, No. 8:16-cv-00952-JDW-AAS, 341 F. Supp. 3d 1305, 1309-14 (M.D. Fla. Sept. 24, 2018), *appeal docketed*, No. 18-14499 (11th Cir. Nov. 5, 2019).

[5] *Glasser v. Hilton Grand Vacations Company, LLC*, No. 18-14499 (11th Cir. Nov. 5, 2019) (pending oral argument on December 6, 2019); *Snow v. Gen. Elec. Co.*, No. 19-1724 (4th Cir. Nov. 1, 2019) (opening brief due by December 16, 2019); *Kloth-Zanard v. Bank of Am.*, Case No. 19-2043 (2d Cir. Oct. 21, 2019) (pending receipt of record);

For example, the Third Circuit adopted the statutory definition of an ATDS, holding that equipment must employ a random or sequential number generator to qualify as an ATDS and affirming summary judgment in the defendant's favor. *Dominguez v. Yahoo, Inc*., 894 F.3d 116, 121 (3d Cir. 2018). But the Ninth Circuit, the only other Circuit to squarely address the issue since *ACA International*, adopted a far broader interpretation, straying from the statutory definition to create its own. *See*, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (expressly rejecting "a straightforward interpretation based on the plain language" of the TCPA).

Notwithstanding the Ninth Circuit's outlier decision, the strong trend of recent district court decisions is to reject *Marks* and adhere to the statutory definition of ATDS. Indeed, numerous district courts have recently adopted the statutory definition of ATDS and held that *Marks*: (a) departs from the Ninth Circuit's prior rulings that the TCPA's language was clear and unambiguous; (b) directly conflicts with the text of the TCPA; (c) ignores the legislative history of the TCPA; and (d) cannot be squared with *ACA International*, which instructed all courts (as a Hobbs Act reviewing court) to disregard the FCC's previous overly-broad interpretation of ATDS. *See*, *e.g.*, *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 626 (N.D. Iowa 2019) ("[T]his Court finds the *Marks* court's decision erroneous as a matter of statutory construction.").[6]

---

*Gadelhak v. AT&T Servs., Inc*., No. 19-1738 (7th Cir. Sept. 27, 2019) (pending decision following oral argument on Sept. 27, 2019); *Allan v. Pennsylvania Higher Educ. Assistance Agency*, No. 19-2043 (6th Cir. Sept. 12, 2019) (appellee's brief due by Jan. 6, 2020); *La Boom Disco, Inc. v. Duran*, Case No. 19-600 (2d Cir. Sept. 11, 2019) (pending oral argument).

[6] *See also, e.g.*, *DeNova v. Owen Loan Servs*., No. 8:17-cv-2204, 2019 WL 4635552, at *3–4 (M.D. Fla. Sept. 24, 2019) (rejecting *Marks*); *Smith v. Navient Sols., LLC*, No. 3:17-191, 2019 WL 3574248, at *7–8 (W.D. Pa. Aug. 6, 2019) (rejecting *Marks*), *appeal docketed*, No. 19-3025 (3d Cir. Sept. 6, 2019); *Adams v. Safe Home Sec. Inc.*, No. 3:18-cv-03098, 2019 WL 3428776, at *4 (N.D. Tex. July 30, 2019) ("[T]he Court respectfully disagrees with the

Despite this trend, lack of clarity reigns across the country, including within the Second Circuit, which has yet to rule on what technology constitutes an ATDS after *ACA International*. Compounding this uncertainty, district courts within this Circuit are split on whether the Second Circuit disavowed the viability of the FCC's 2003 and 2008 Orders in *King v. Time Warner Cable Inc.*, 894 F.3d 473, 477 (2d Cir. 2018), and how the answer to that question impacts what constitutes an ATDS.[7]  This confusion has real world consequences, as there is no statutory cap on damages under the TCPA, so it can and has led to ruinous, company-ending liability for defendants to the tune of many hundreds of millions of dollars (as well as crushing defense costs).[8]

**B.     The Second Circuit Will Imminently Issue a Ruling Defining the Scope of an ATDS.**

This uncertainty will not exist much longer in this Circuit, as the Second Circuit is set to rule on the definition of an ATDS in at least two cases in the next few months: *Kloth-Zanard* and

---

Ninth Circuit."); *Snow*, 2019 WL 2500407, at *6–7 (rejecting *Marks*); *Roark v. Credit One Bank, N.A.*, No. CV 16-173, 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018) (rejecting *Marks*; requiring "present capability"); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018) (rejecting *Marks*; holding TCPA "not ambiguous").

[7] In *King*, the Second Circuit recognized that because *ACA International* "invalidated th[e] [FCC's 2015] Order and thereby removed any deference we might owe to the views the FCC expressed in it, we must decide independently whether the district court's broad understanding of the 'capacity' a device must have in order to qualify as an ATDS under the TCPA is a supportable interpretation of the statute."  *King*, 894 F.3d at 477.  *Compare Duran*, 369 F. Supp. 3d at 487 ("While the Second Circuit plainly held that the 2015 Order had been invalidated, the court nowhere explicitly addresses the validity of the prior FCC Orders.") *with Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639, 646 (E.D. Pa. 2018) (citing *King* for proposition that Second Circuit held that, "by invalidating the 2015 Order, the D.C. Circuit necessarily invalidated the 2003 and 2008 Orders as well").

[8] *See, e.g.*, *McMillion, et al. v. Rash Curtis & Assoc.*, No. 4:16-cv-03396-YGR (N.D. Cal. Sept. 9, 2019) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

*La Boom*, TCPA cases that both turn on the definition of ATDS.

In *Kloth-Zanard*, the lower court granted the defendants' motions for summary judgment on TCPA claims, holding that the plaintiff failed to meet her burden to support a claim "that she was called from a device with the capacity 'to store or produce telephone numbers . . . using a random or sequential number generator,' as the statute requires." *Kloth-Zanard v. Bank of Am.*, No. 3:15-CV-1208-MPS, 2019 WL 1922070, at *10 (D. Conn. Apr. 30, 2019) (construing *ACA Int'l* as holding that "an ATDS must have the capacity to store or produce telephone numbers using a random or sequential number generator"). Thus, in *Kloth-Zanard*, the Second Circuit will review the scope of an ATDS. *Kloth-Zanard v. Bank of Am.*, Case No. 19-2043 (2d Cir. Sept. 20, 2019) (pending receipt of record).

Similarly, in *La Boom*, the lower court denied the plaintiff's motion for summary judgment and granted summary judgment for defendant *sua sponte*, holding the equipment at issue was not an ATDS as a matter of law. *Duran*, 369 F. Supp. 3d at 476. In doing so, it decided two key issues. First, it held (in Signpost's view, incorrectly) that the D.C. Circuit did not invalidate the FCC's 2003 Order holding "that equipment can meet the definition of an autodialer if it pulls from a list of numbers, so long as the equipment also has the capacity to dial those numbers without human intervention." *Id.* at 488-90. Second, it held (in Signpost's view, correctly) that the systems used to send messages at issue in *La Boom* nevertheless "operate with too much human involvement to meet the definition of an autodialer" or ATDSs "because a user determines the time at which the [] programs send messages to recipients." *Id.* at 492.

Thus, the Second Circuit is set to review the proper definition of ATDS and whether *ACA International* invalidated the FCC's 2003 Order. Br. For Appellee, *La Boom Disco, Inc. v. Duran*, No. 19-600, Dkt. 47, p. 10 (2d Cir. Aug. 13, 2019). And the Second Circuit is set to do so very

soon, as briefing is complete and the Second Circuit will hear oral argument on December 13, 2019.  Not., *La Boom Disco, Inc. v. Duran*, No. 19-600, Dkt. 54 (2d Cir. Oct. 3, 2019).

### C.  The FCC Will Also Issue a Ruling Defining the Scope of an ATDS.

The uncertainty surrounding the definition of ATDS will also end as a result of the FCC's forthcoming ruling on the issue.  The FCC has recognized that its prior precedent on what qualifies a device as an ATDS was vacated by the D.C. Circuit in *ACA International*, with its current Chairman admitting that its prior rulings were "misguided."[9]  The FCC issued a Request for Comment on how it should re-interpret the TCPA in the wake of *ACA International*.[10]  In its Request for Comment, the FCC explained it seeks comment on, *inter alia*, "what constitutes an 'automatic telephone dialing system'" and "the functions a device must be able to perform to qualify" as an ATDS.  *Id*. at 1, 3.  It also specifically noted that it was seeking comment on whether a device could be an ATDS if it merely dialed numbers from a list.  *Id.* at 2-3, n. 19.  In doing so, the FCC explicitly recognized that such questions were necessary because the D.C. Circuit had vacated the FCC's prior conflicting rulings on the subject.

Following the nationwide split in the courts, the FCC opened a supplemental comment period related to the Public Notice, focusing specifically on the proper interpretation of ATDS.[11]

---

[9] *Press Release*, FCC, Chairman Pai Statement on D.C. Circuit Decision Curbing Regulatory Overreach, *available at* https://apps.fcc.gov/edocs_public/attachmatch/DOC-349765A1.pdf; *see also ACA Int'l*, 885 F.3d at 701.

[10] *See* FCC, DA 18-493, Consumer and Gov't Affairs Bureau Seeks Comment on Interpretation of the TCPA in Light of the D.C. Circuit's *ACA Int'l* Decision (May 14, 2018) *available at* https://docs.fcc.gov/public/attachments/DA-18-493A1.pdf ("Request for Comment").

[11] *See* Consumer and Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's *Marks v. Crunch San Diego, LLC* Decision (Oct. 3, 2018) *available at* https://docs.fcc.gov/public/attachments/DA-18-1014A1.pdf.

Thereafter, FCC Commissioner Michael O'Rielly issued a statement indicating courts should stay proceedings until the FCC provides guidance per the primary jurisdiction doctrine—lest cases like this one contribute to the current "patch work of interpretations" on what "ATDS" means.[12]

Importantly, the commissioners who dissented from the FCC's vacated 2015 Order now make up a majority of the FCC, and they have praised the *ACA International* decision as a proper correction of "regulatory overreach." *See, e.g.*, *Press Release*, FCC, Chairman Pai Statement on D.C. Circuit Decision Curbing Regulatory Overreach (Mar. 16, 2018), available at https://apps.fcc.gov/edocs_public/attachmatch/DOC-349765A1.pdf.   Chairman Pai previously explained that the statute defines an ATDS narrowly and does not include equipment that "cannot store or produce telephone numbers to be called using a random or sequential number generator and [] cannot dial such numbers."  2015 Order at 8074.  Commissioner O'Rielly echoed support for that same narrow approach, explaining that the FCC's prior approach:

> misreads the statute by including equipment that merely has the capacity to dial from a list of numbers. That's not what the TCPA says. It makes clear that the telephone numbers must be stored or produced "using a random or sequential number generator". Therefore, calling off a contact list or from a database of customers, for example, does not fit the definition.

*Id.* at 8089.  For these reasons, the FCC is expected to adopt a narrow definition in line with the statute.

The FCC's forthcoming ruling warrants a stay of these proceedings as, regardless of whether it is binding or persuasive, the FCC's forthcoming ruling will "be of significant assistance in clarifying the meaning of [ATDS]" in this matter—especially absent on point Second Circuit authority.  *DiStasio v. Edible Arrangements, LLC*, No. 3:16-cv-538-DJS (Dist. Conn. March 23,

---

[12] Michael O'Rielly, Remarks of FCC Commissioner Michael O'Rielly Before the ACA International Washington Insights Conference (May 16, 2019) *available at* https://docs.fcc.gov/public/attachments/DOC-357496A1.pdf.

2019); *see also, e.g., Buhr v. ADT Inc.*, No. 9:18-cv-80605-RLR at Dkt. 48 (S.D. Fla. Jan. 14, 2019) (denying motion to lift primary jurisdiction stay and holding case will remain stayed for at least six additional months pending ruling from FCC on proper interpretation of ATDS); *Wahl v. Stellar Recovery, Inc.,* No. 14-CV-6002-FPG, 2014 WL 4678043, at *2 (W.D.N.Y. Sept. 18, 2014) (staying proceedings under primary jurisdiction where issues involved "technical and policy considerations within the FCC's expertise").  Indeed, Plaintiff's counsel has previously contended that FCC rulings on the definition of "automatic telephone dialing system" are binding on courts under the Hobbs Act.  *See, e.g.*, *Mey v. Venture Data, LLC, et al.,* No. 5:14-cv-00123-JPB-JPM (N.D.W.V. Dec. 15, 2016).

### D. The Forthcoming Second Circuit and FCC Rulings Defining the Scope of an ATDS Could Extinguish Plaintiff's Claims and Dispose of this Action.

While it is not certain how the Second Circuit or FCC will interpret "ATDS" in the forthcoming decisions, it is certain that the decisions will be binding (or in the case of the FCC's ruling, at least significantly persuasive) and will fundamentally shape (and potentially resolve) this litigation.  For example, the FCC or Second Circuit could rule in line with the lower court decisions and hold, as most recent district courts including *Kloth-Zanard* have, that an ATDS means exactly what the statute says: a system that employs a random or sequential number generator.  If that occurs, the calling system here will not qualify as an ATDS, under Plaintiff's pleading or the actual facts.  As to Plaintiff's pleading, it states only that Signpost's system is an ATDS because it used "a pre-loaded list of telephone numbers," which was "then automatically dialed in sequence." (Dkt. 24, ¶¶ 32-34.)  And as to the actual facts, Signpost did not place any of the calls referenced in the Amended Complaint with a system that stored or produced telephone numbers to be called, using a random or sequential number generator, and dialed such numbers.  (Declaration of William Foster ("Foster Decl.") filed concurrently herewith, ¶¶ 3-4.)

Thus, the Second Circuit's and/or FCC's forthcoming decisions will likely dispose of this action.  And even in the unlikely event they do not, they will at the very least substantially streamline this case, including fact and expert discovery and related motion practice.

### E.   This Action Should Be Stayed Pending the Forthcoming Rulings on the Central and Dispositive ATDS Issue by Either the Second Circuit or FCC.

Given the above, this TCPA action should be stayed pending the Second Circuit's forthcoming ATDS decisions and/or the FCC's forthcoming ruling.  The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Thus, a district court "has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  In this Circuit, the "decision whether to stay an action calls on a district court's 'studied judgment,' requiring the court to examine 'the particular facts before it' and determine 'the extent to which . . . a stay would work a hardship, inequity, or injustice to a party, the public or the court.'"  *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 99 (2d Cir. 2012)).  Courts in this Circuit also consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (cits. omitted).  Under the *Landis* doctrine, courts within this Circuit and outside of it routinely stay proceedings "when a higher court is close to settling an important issue of law bearing on the action."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); *see also, e.g.*, *Ruggieri v. Boehringer Ingelheim Pharm., Inc.*, No. 06-CV-1985, 2012 WL 1521850, at *1 (D. Conn. Feb. 24, 2012) (staying

proceeding pending Supreme Court ruling in another case); *Drake v. Synchrony Bank,* No. 1:19-cv-02134-CCB (D. Md. Oct. 17, 2019) (administratively closing case pending Fourth Circuit's ATDS decision in *Snow v. Gen. Electric Co.*).[13]   Similarly, courts routinely stay proceedings pending a ruling from the FCC under the primary jurisdiction doctrine, which allows a federal court to dismiss or stay a case in deference to an agency's findings when the question at issue involves technical or policy considerations within the agency's particular field of expertise,  the question is particularly within the agency's discretion, there is a risk of inconsistent rulings, and a prior application to the agency has been made.  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82 (2d Cir. 2006); *Wahl*, 2014 WL 4678043, at *2; *Telstar Res. Grp., Inc. v. MCI, Inc.*, 476 F. Supp. 2d 261, 271, 275 (S.D.N.Y. 2007) (Koeltl, J.); *see also, e.g.*, *DiStasio*, No. 3:16-cv-538-DJS (Dist. Conn. March 23, 2019); *Buhr v. ADT Inc.*, No. 9:18-cv-80605-RLR at Dkt. 48 (S.D. Fla. Jan. 14, 2019).

Here, a stay is warranted under both doctrines.  First, the definition of an ATDS involves technical and policy considerations within the FCC's expertise, the FCC already plans to exercise its discretion and issue a decision on the ATDS issue, and it has explicitly warned of the danger of inconsistent rulings.  Thus, this case is ripe for stay under the primary jurisdiction doctrine.  *See, e.g., Wahl*, 2014 WL 4678043, at *2 (staying proceedings under primary jurisdiction doctrine pending decision "by FCC addressing issues . . . relevant to the claims raised in this case"); *Telstar*,

---

[13] *See also, e.g.*, *Acton v. Intellectual Capital Mgmt., Inc.*, No. 15-CV-4004, 2015 WL 9462110, at *2 (E.D.N.Y. Dec. 28, 2015) (staying TCPA case pending outcome of Supreme Court and D.C. Circuit appeals, including *ACA International*); *Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. and Annuity Corp.*, No. 15-CV-4767, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) (collecting cases from district courts of California, Florida, and Virginia staying TCPA cases pending *Spokeo*).

476 F. Supp. 2d at 271 (staying FCA claim pending "FCC's consideration of the relevance of its existing jurisdictional separations procedures" under primary jurisdiction doctrine); *see also, e.g.*, *DiStasio*, No. 3:16-cv-538-DJS at Dkt. 99 (Dist. Conn. March 23, 2019) (staying TCPA claim pending ruling from FCC on proper interpretation of ATDS, which "could be of significant assistance in clarifying the meaning of that term"); *Buhr v. ADT Inc*., No. 9:18-cv-80605-RLR at Dkt. 48 (S.D. Fla. Jan. 14, 2019) (denying motion to lift primary jurisdiction stay and holding case will remain stayed for at least six additional months pending ruling from FCC on proper interpretation of ATDS).

Second, and as to a stay under the *Landis* doctrine, the Second Circuit and FCC are close to settling an important and dispositive issue of law on which this case turns and that will potentially conclude this case. Should either the FCC or the Second Circuit ruling establish that Signpost's system is not an ATDS, Plaintiff's claim will fail. And a stay would not work to any injustice or hardship on any party. Courts consistently hold that there is no likelihood of damage or harm under this factor merely because the stay could cause a delay to the plaintiff in receiving money damages. *See Compressor Eng'g Corp. v. Thomas*, No. 10-10059, 2016 WL 438963, at *6 (E.D. Mich. Feb. 3, 2016) (staying action based on *Spokeo* where plaintiff claimed to have suffered emotional distress as result of calls, noting "that a stay in this action is not likely to prejudice or harm Plaintiff"). For these reasons, a stay will not prejudice Plaintiff.

On the other hand, not staying the case would work substantial prejudice on Signpost. "[C]lass actions involve the potential for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims. It is also generally understood that the costs can be particularly enormous for defendants." *Physicians Healthsource, Inc. v. Janssen Pharm., Inc*., No. CIV.A. 12-2132-FLW, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014). If this case is not stayed,

Signpost will have to invest substantial resources litigating this matter, despite the possibility that the Second Circuit and/or the FCC will render that investment unnecessary.  Even Plaintiff would be prejudiced by proceeding with this case before the forthcoming rulings because he would incur substantial expense in individual and class discovery that could end up being for naught.  Thus, incurring the significant costs of class and expert discovery before the law is settled is inequitable and will waste the resources of both the parties and the Court, which will have to expend substantial resources deciding significant motions and policing discovery.  This is especially the case where, as here, the Second Circuit is set to hear oral argument on the issue within days.[14]

Moreover, a stay would promote the public interest because the public has a strong interest in the efficient, fair, and uniform administration of the judicial system.  A stay also would promote the interests of third persons who are not parties to this litigation because it will prevent discovery that would unnecessarily burden non-parties, such as the nation's dozens of cellular carriers—which are often the recipient of burdensome mass-subpoenas in putative TCPA class actions—and ensure a uniform interpretation of the law.  *See, e.g., Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co*., No. 17-CV-5916-AJN, 2018 WL 3849840, at *3 (S.D.N.Y. Aug. 10, 2018) (staying action pending resolution of related case because "the public is also not served by any wasting of judicial resources"); *Nuccio v. Duve*, No. 7:13-CV-1556 MAD-TWD, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action [pending the outcome of a district court action involving similar issues] will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources and 'minimiz[ing] the possibility of conflicts between different courts . . . .'").  Thus, by "conserving judicial resources, a stay will

---

[14] The Second Circuit is set to hear oral argument on December 13, 2019.  Not., *La Boom Disco, Inc. v. Duran*, Case No. 19-600, Dkt. 54 (2d Cir. Oct. 3, 2019).

14

serve not only the interest of the courts, but also the interests of the Parties, the nonparties, and the public in "'an orderly and efficient use of judicial resources.'" *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 306 (S.D.N.Y. 2009).  The balance of the equities strongly favors granting this motion, and continuing the stay put in place by the Court at the initial conference.

### F.    Plaintiff's New Internal Do-Not-Call "Claim" Does Not Change this Analysis.

Plaintiff's new internal do-not-call "claim" does not change this analysis.  After Signpost indicated it would be moving to stay this case, Plaintiff amended his pleading to add an internal do-not-call "claim," in an obvious but ill-conceived attempt to thwart this motion.  In that claim, Plaintiff alleges that Signpost made calls without "a written policy pertaining to 'do-not-call' requests," training its personnel on such policy, or recording such requests.  (Dkt. 26, ¶¶ 99-102.) This new claim is subject to dismissal on the pleadings, but Signpost's responsive pleading deadline is stayed pending resolution of the instant motion.  Regardless, this new "claim" does not warrant lifting the stay in this case for at least five reasons.

First, the claim lacks merit, as there is no private right of action for internal do-not-call policy violations.  *See, e.g.*, *Wilson v. PH Phase One Operations L.P.*, No. 18-3285-DKC, 2019 WL 4735483, at *6 (D. Md. Sept. 27, 2019) (dismissing plaintiff's claim under § 64.1200(d) because regulation promulgated under § 227(d), not § 227(c), so no private right of action for such a claim).[15]  Second, at the time of the calls alleged in the Amended Complaint, Signpost in fact

---

[15] *See also Braver v. NorthStar Alarm Serv., LLC*, No., 17-0383, 2019 WL 3208651, at *14-15 (W.D. Okla. July 16, 2019) (same, and granting defendant's summary judgment motion); *Burdge v. Ass'n Health Care Mgmt. Inc.*, No. 1:10-cv-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (holding no private right of action under § 64.1200(d), which "are technical and procedural in nature and were promulgated pursuant to [47 U.S.C. §] 227(d).").

had internal do-not-call procedures, including a written policy for maintaining an internal do-not-call list, training personnel on the do-not-call list, and recording internal do-not-call requests, despite Plaintiff's bald and false allegations to the contrary.  (Foster Decl. ¶ 5.)  Third, Plaintiff *does not even allege* that he made any do-not-call request or demanded any such policy.  As such, any failure to maintain a list or policy cannot be fairly traceable to any calls made to Plaintiff. Plaintiff therefore lacks standing (and a good-faith basis) to bring any internal do-not-call policy claim here, as the Eleventh Circuit just held in a published decision issued a few days ago.  *See Cordoba v. DIRECTV, LLC*, No. 18-12077, 2019 WL 6044305, at *7 (11th Cir. Nov. 15, 2019) ("There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who <u>never</u> said to Telecel they didn't want to be called again. These plaintiffs therefore would lack Article III standing to sue.") (emphasis in original).  Fourth, the regulation under which Plaintiff brings his new "claim" applies to "residential" numbers, and Plaintiff does not even allege that his purported cellular telephone number is not used for a business purpose.  Nor can he, as he holds his number out online as his business number—which is also fatal to his claim.  47 C.F.R. § 64.1200(d)(3) & (e) (protection only applicable to "residential" subscribers); Request for Judicial Notice filed concurrently herewith, Exs. A-C (evidencing Plaintiff using the subject number as his business number for his company, American Sliding Door Repair).  Finally, even if Plaintiff's new "claim" could somehow survive, it would not justify moving forward with burdensome and expensive class discovery here, where the Second Circuit and/or FCC will soon issue a ruling that will likely moot Plaintiff's ATDS claim.  *Telstar*, 476 F. Supp. 2d at 275 (Koeltl, J.) ("[I]f plaintiff amended this claim, it would also be stayed pending the [FCC's] consideration of the issues raised in the first claim"); *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 5513638, at *1 (S.D.N.Y.

Nov. 17, 2017) (granting stay pending *ACA Int'l* opinion notwithstanding pre-recorded voice claims); *Reynolds v. Time Warner Cable, Inc.*, No. 16-CV-6165-W, 2017 WL 362025, at *1 (W.D.N.Y. Jan. 25, 2017) (same).

## IV.    CONCLUSION

For the foregoing reasons, Signpost moves for a stay of these proceedings pending forthcoming ATDS decisions by: (a) the FCC; and/or (b) the Second Circuit.

Dated: November 22, 2019

<div style="margin-left:40%">

*/s/ Kristapor Vartanian*
Michael D. Kabat
New York Bar No. 836784
Ryan D. Watstein
*Admitted Pro Hac Vice*
**KABAT CHAPMAN & OZMER LLP**
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Phone: (404) 400-7300
Fax: (404) 400-7333
mkabat@kcozlaw.com
rwatstein@kcozlaw.com

Kristapor Vartanian
*Admitted Pro Hac Vice*
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Avenue, Suite 2225
Los Angeles, California 90071
Phone: (213) 493-3980
Fax: (404) 400-7333
kvartanian@kcozlaw.com

</div>

17

**CERTIFICATION OF WORD COUNT**

**(Hon. John G. Koeltl's Individual Practices, Section 2.D)**

Pursuant to Judge Koeltl's Individual Practices § 2.D, I hereby certify that the foregoing Memoranda of Law contains fewer than 7,000 words.  I relied on the word count of the word-processing system used to prepare the brief.  This brief contains 5,729 words, excluding the portions exempted by the Individual Practices § 2.D.  The foregoing Memoranda of Law also complies with the formatting rules detailed in the Individual Practices.

Dated: November 22, 2019

                                                */s/ Kristapor Vartanian*
                                                Kristapor Vartanian

18

## CERTIFICATE OF SERVICE

I, Kristapor Vartanian, an attorney, hereby certify that on November 22, 2019, I caused the above and foregoing papers (inclusive of the Notice of Motion, Declaration of William Foster, and Request for Judicial Notice) to be served upon counsel of record by filing such papers via the Court's ECF system.

*/s/ Kristapor Vartanian*
Kristapor Vartanian