**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM LOFTUS, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>SIGNPOST, INC.,<br><br>     Defendant. | Case No. 1:19-CV-07984-JGK<br><br>**DEFENDANT SIGNPOST, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY** |

## TABLE OF CONTENTS

I.  Introduction ............................................................................................................ 1

II.  Procedural History .................................................................................................. 2

III.  Legal Argument ....................................................................................................... 5

    A.  The Definition of ATDS Is Unsettled Nationwide, Though a Majority of Circuits Adhere to the Statutory Definition. .......................................... 5

    B.  The Supreme Court Will Imminently Issue a Ruling Defining the Scope of an ATDS. ................................................................................................ 7

    C.  The Forthcoming Supreme Court Ruling Defining the Scope of an ATDS Could Extinguish Plaintiff's Claims and Dispose of this Action. .......................... 8

    D.  The Court Should Continue the Stay Pending the Supreme Court's Forthcoming Ruling on the Central and Dispositive ATDS Issue......................... 8

    E.  Plaintiff's Internal Do-Not-Call "Claim" Does Not Change this Analysis. ......... 14

IV.  CONCLUSION ...................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACA International v. Federal Communications Commission*,
 885 F.3d 687 (D.C. Cir. 2018) .................................................................................1, 5, 6, 16

*Acton v. Intellectual Capital Mgmt., Inc.*,
 No. 15-CV-4004, 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) ...........................................9

*Aerotel, Ltd. v. IDT Corp.*,
 No. 03-CV-6496-RJH-FM, 2003 WL 23100263 (S.D.N.Y. Dec. 30, 2003)..........................10

*Barr v. American Association of Political Consultants, Inc.*,
 No. 19-631 ................................................................................................................... *passim*

*Beal v. Outfield Brew House, LLC*,
 No. 20-1961 (8th Cir. July 14, 2020)...................................................................................10

*Boger v. Citrix Sys., Inc.*,
 No. 8:19-CV-01234-PX, 2020 WL 1939702 (D. Md. Apr. 22, 2020) ...................................12

*Braver v. NorthStar Alarm Serv., LLC*,
 No., 17-0383, 2019 WL 3208651 (W.D. Okla. July 16, 2019) .............................................15

*Burdge v. Ass'n Health Care Mgmt. Inc.*,
 No. 1:10-cv-00100, 2011 WL 379159 (S.D. Ohio Feb. 2, 2011) ..........................................15

*Calhoun v. FLRish, Inc.*,
 No. 3:19-CV-08212, Doc. 55 (N.D. Cal. May 13, 2020) ......................................................16

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*,
 630 F. Supp. 2d 295 (S.D.N.Y. 2009)...............................................................................11, 14

*Clinton v. Jones*,
 520 U.S. 681 (1997)................................................................................................................9

*Compressor Eng'g Corp. v. Thomas*,
 No. 10-10059, 2016 WL 438963 (E.D. Mich. Feb. 3, 2016)................................................10

*Cordoba v. DIRECTV, LLC*,
 942 F.3d 1259 (11th Cir. 2019) ............................................................................................15

*DiStasio v. Edible Arrangements, LLC*,
 No. 3:16-CV-538-DJS (D. Conn. Jan. 24, 2020)....................................................................9

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018)..................................................................................6

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019) ............................................................................7

*Duguid v. Facebook, Inc.*,
    No. 15-CV-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ..................7

*Duran v. La Boom Disco, Inc.*,
    No. 19-600 .........................................................................................................2

*Duran v. La Boom Disco, Inc.*,
    955 F.3d 279 (2d Cir. 2020)...........................................................................3, 5

*Facebook, Inc. v. Duguid*,
    No. 19-511 ................................................................................................*passim*

*Gadelhak v. AT&T Servs., Inc.*,
    950 F.3d 458 (7th Cir. 2020) .............................................................................6

*Glasser v. Hilton Grand Vacations Co.*,
    948 F.3d 1301 (11th Cir. 2020) .........................................................................6

*Grayned v. City of Rockford*
    408 U.S. 104 (1972).........................................................................................4

*Hoffman v. Jelly Belly Candy Co.*,
    No. 2:19-CV-01935-JAM-DB (E.D. Cal. July 17, 2020).....................................10

*Jugmohan v. Zola*,
    No. 98-CV-1509, 2000 WL 222186 (S.D.N.Y. Feb. 25, 2000) .............................9

*Kappel v. Comfort*,
    914 F. Supp. 1056 (S.D.N.Y. 1996)....................................................................9

*Lacy v. Comcast Cable Commc'ns, LLC*
    No. 3:19-CV-05007-RBL, 2020 WL 2041755 (W.D. Wash. Apr. 28, 2020) ........12

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).................................................................................3, 9, 16

*In re Literary Works in Elec. Databases Copyright Litig.*,
    No. 00-cv-6049, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001)................................9

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) ........................................................................6, 7

*May v. Whatsapp, Inc.*,
   No. 4:20-CV-659 (N.D. Cal. July 15, 2020)................................................10

*McMillion, et al. v. Rash Curtis & Assoc.*,
   No. 4:16-CV-03396-YGR (N.D. Cal. May 4, 2020) ....................................6

*Mejia v. Time Warner Cable Inc.*,
   No. 15-CV-6445 (JPO), 2017 WL 5513638 (S.D.N.Y. Nov. 17, 2017) ...............16

*Nuccio v. Duve*,
   No. 7:13-cv-1556 MAD-TWD, 2015 WL 1189617 (N.D.N.Y. Mar. 16, 2015) ...............14

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
   No. 12-CV-2132-FLW, 2014 WL 413534 (D.N.J. Feb. 4, 2014) ...................11

*Ramirez v. Trans Union, LLC*,
   No. 12-cv-00632, 2015 WL 6159942 (N.D. Cal. June 22, 2015)...................11

*Range v. 480-486 Broadway, LLC*,
   810 F.3d 108 (2d Cir. 2015)...................................................9

*Reynolds v. Time Warner Cable, Inc.*,
   No. 16-CV-6165-W, 2017 WL 362025 (W.D.N.Y. Jan. 25, 2017)...................16

*Royal Park Inv. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
   No. 17-CV-5916-AJN, 2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018) ...............13

*Ruggieri v. Boehringer Ingelheim Pharm., Inc.*,
   No. 06-CV-1985, 2012 WL 1521850 (D. Conn. Feb. 24, 2012) ...................10

*Seefeldt v. Entm't Consulting Int'l, LLC*,
   No. 4:19-CV-00188, 2020 WL 905844 (E.D. Mo. Feb. 25, 2020)...................16

*Sensibaugh v. EF Educ. First, Inc.*,
   No. 2:20-CV-01068-MWF-PVC (C.D. Cal. July 14, 2020)...................10

*Sessions v. Morales-Santana*,
   137 S. Ct. 1678 (2017).......................................................3, 4

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012).......................................9

*Whittaker v. All Reverse Mortg.*,
   No. 20-CV-08016, 2020 WL 2829785 (D. Ariz. May 29, 2020) ...............11

*Wilson v. PH Phase One Operations L.P.*,
   No. 18-3285-DKC, 2019 WL 4735483 (D. Md. Sept. 27, 2019) ...................14

*Young v. Bank of Am. N.A.*,
    Case. No. 4:19-CV-03867-JST (N.D. Cal., July 15, 2020) ....................................................10

**Statutes**

TCPA, 47 U.S.C. § 227....................................................................................................1, 5, 15

**Other Authorities**

47 C.F.R. § 64.1200(d)(3) & (e) ................................................................................................15

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
    of 1991, Declaratory Ruling and Order*, 23 FCC Rcd. 559 (2008)...........................................5

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,
    Declaratory Ruling and Order*, 18 FCC Rcd. 14014 (2003).....................................................5

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, et
    al., Declaratory Ruling and Order*, 30 FCC Rcd. 7961 (2015)................................................5

## I.      INTRODUCTION

To prevail on his claims in this putative class action lawsuit, Plaintiff William Loftus must prove that Defendant Signpost, Inc. called him with an automatic telephone dialing system ("ATDS"), as defined under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). This, of course, hinges on what the proper interpretation of "ATDS" is.   Following the D.C. Circuit's seminal decision in *ACA International v. Federal Communications Commission* ("*ACA Int'l*"), 885 F.3d 687 (D.C. Cir. 2018)—which vacated the Federal Communications Commission's ("FCC") overbroad interpretation of ATDS—courts across the country have reached different conclusions on that question, leading to a deep Circuit split.

But clarity from the highest court in the land is now imminent.   On July 9, 2020, the Supreme Court granted certiorari in *Facebook, Inc. v. Duguid*, No. 19-511 ("*Facebook*") and is set to answer the question of what type of equipment qualifies as an ATDS, with the petitioner's opening brief due before Labor Day.   While it is uncertain what the Supreme Court will hold in *Facebook*, the textualist court will likely reverse the Ninth (and thus Second) Circuits' rulings and follow the majority of Circuit courts (Third, Seventh, and Eleventh) in ruling that the TCPA means what it says: for equipment to qualify as an "ATDS," it must employ a "random or sequential number generator."

If the Supreme Court follows the majority of Circuit courts, Plaintiff's case will end.   That is because the calling system at issue did not employ a random or sequential number generator. Dkt. 29, ¶¶ 3-4.   And even if the Supreme Court does not rule in Signpost's favor, the ruling will directly effect this case and provide substantial guidance and clarity to this Court and the parties, as well as considerably streamline fact and expert discovery, eliminate the need for other proceedings (such as briefing and discovery disputes), and encourage settlement discussions.   As

a result, a stay would not work to the injustice or hardship of any party and would instead conserve the resources of the Court and the parties—precious resources during a recession and pandemic.

Accordingly, Signpost respectfully requests this case remain stayed pending the Supreme Court's forthcoming ATDS decision.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this putative TCPA class action on the basis that Signpost "called the Plaintiff using an [ATDS]." Dkt. 1, ¶ 2. Plaintiff alleges that Signpost uses "a pre-loaded list of telephone numbers," which is then "automatically dialed in sequence." Dkt. 1, ¶¶ 22-23; Dkt. 26, ¶¶, 36-37; Dkt. 41 at 1. Based on this single claim, Plaintiff seeks to certify a class of persons who, among other things, received calls made using "the same or similar dialing system used to call the Plaintiff." Dkt. 1, ¶ 52; Dkt. 26, ¶¶ 81. Signpost answered, denying violating the TCPA or placing any calls with an ATDS. Dkt. 13.

This Court preliminarily stayed this action during the November 15, 2019 initial pretrial conference, given Signpost's intention to file a motion to stay this action pending the Second Circuit Court of Appeals' then-forthcoming ruling on what constitutes an "ATDS" in *Duran v. La Boom Disco, Inc.* ("*Duran*"), No. 19-600. *See* Dkt. 41 at 2-3. Upon learning that Signpost planned to do so, Plaintiff amended his Complaint to add an internal do-not-call "claim," alleging that Signpost made calls without "a written policy pertaining to 'do-not-call' requests," training its personnel on such policy, or recording such requests. Dkt. 26, ¶¶ 99-102.

Shortly after the conference, Signpost filed its motion to stay. Dkt. 41 at 2. After briefing was completed on the motion, the U.S. Supreme Court granted certiorari in *Barr v. American Association of Political Consultants, Inc.* ("*AAPC*"), No. 19-631, to determine whether the TCPA's ATDS provision violates the First Amendment, adding to the reasons for a stay. Dkts. 28, 32, 40 & 41 at 3. While Signpost's motion was pending, the Second Circuit issued its decision

in *Duran*, widening the Circuit split on the definition of ATDS (detailed *infra*). *See Duran*, 955 F.3d 279, 281 n.5 (2d Cir. 2020); Dkt. 41 at 3. On June 2, 2020, this Court granted Signpost's motion and stayed this action until July 17, 2020 pending the Supreme Court's decision in *AAPC*—reasoning that the *Landis* "factors clearly weigh in favor of a stay" pending "a decision by the Supreme Court." Dkt. 41 at 5. The Court reasoned that a stay would not prejudice Plaintiff and would instead serve the interest of third parties, Signpost, and the public "in the efficient conduct of litigation" and "conserv[ation of] judicial resources [to] avoid[] unnecessary expense" of class discovery on a cause of action which "may ultimately be rendered moot" by the Supreme Court's decision. *Id.* at 5-6.

On July 6, 2020, the Supreme Court issued its decision in *AAPC*, saving the TCPA by severing the government debt exception. *AAPC*, 140 S. Ct. 2335, 2020 WL 3633780, *13 (2020). However, a majority of Justices held that the ATDS restriction was unconstitutional while it contained the exception (*i.e.*, pre-severance). *See id.* at *2, 5. Because the calls at issue in this case occurred during that period—between 2015 and July 6, 2020 (*see* Dkt. 24, ¶¶ 41, 57, 68)—Signpost cannot be held liable for the calls in this case. *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (defendant cannot be held liable under an unconstitutional law regardless of how a legislature "might subsequently cure the [constitutional] infirmity").[1]

---

[1] Justice Kavanaugh, speaking for a three-justice plurality, suggests, in *dicta*, that prior adjudications of liability would not be undone by the decision. *AAPC*, 2020 WL 3633780, at *13 n.12. This *dicta*—which was criticized by two Justices, *id*. at *22 ("Kavanaugh *suggests* that the ban on government-debt collection calls announced today might be applied only prospectively") (emphasis supplied) and not passed on by the remaining four Justices—does not change the ultimate holding of the case, adopted by a majority of justices: that the automated call provision combined with the government debt exception was unconstitutional pre-severance (*i.e.*, going back to 2015 when the debt exception was enacted). *Id.* at *2, 5. Nor does it change the fact that unconstitutional statutes may not be applied to impose

However, the parties need not brief and the Court need not rule on this weighty constitutional issue—which was not resolved by the Supreme Court's plurality opinion in *AAPC*. That is because the Supreme Court also granted *certiorari* in *Facebook* only three days later (on July 9, 2020) to resolve the Circuit split on "whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator'"—***the exact issue that served as the basis for Signpost's initial request stay***. Order, *Facebook*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020); Request for Judicial Notice filed concurrently herewith ("RJN"), Ex. C (Supp. Br. For Pet'r, *Facebook*, No. 19-511 (filed July 7, 2020) (renewing request for review following *AAPC*)) & Ex. A (Pet. for Writ of Cert, *Facebook*, No. 19-511 (filed Oct. 17, 2019)); Dkt. 28 at 3-11 (discussing divide between courts regarding proper definition of ATDS and explaining why a decision that an ATDS means exactly what the statute says—a system that employs a random or sequential number generator—will likely dispose of this action).  In making this determination, the Supreme Court will effectively decide whether to reverse the Second Circuit's decision in *Duran*, as the Second Circuit followed the Ninth Circuit on this issue.

For similar reasons cited in this Court's order granting Signpost's initial motion to stay pending the Supreme Court's ATDS decision in *AAPC* (regarding the constitutionality of the ATDS ban), this Court should also grant Signpost's instant motion to stay pending the Supreme Court's ATDS decision in *Facebook* (regarding the proper definition of ATDS), which will determine whether Plaintiff's action can proceed.

---

liability on litigants during the time they are unconstitutional, under Supreme Court precedent.  *See Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) ("Necessarily, we must consider the facial constitutionality of the ordinance in effect when appellant was arrested and convicted."); *Morales-Santana*, 137 S. Ct. at 1699 n.24.

III.   **LEGAL ARGUMENT**

   A.   **The Definition of ATDS Is Unsettled Nationwide, Though a Majority of Circuits Adhere to the Statutory Definition.**

Among other things, the TCPA prohibits calling a cellular telephone with an ATDS without the called party's consent.  47 U.S.C. § 227.  An ATDS is defined as "equipment which has the capacity -- to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."  47 U.S.C. § 227(a)(1).  The FCC purported to interpret this statutory definition in various orders.[2]  But in March 2018, the D.C. Circuit vacated the FCC's interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad.[3]  47 U.S.C. § 227; *ACA Int'l*, 885 F.3d at 701.  This left a vacuum of authority on what qualifies as an ATDS and called into question pre-2018 cases addressing that issue, given that most of those cases were decided based on the now-vacated FCC guidance.

In that vacuum, courts across the country have reached inconsistent conclusions on what functionalities render a calling or messaging system an ATDS.  *See, e.g.*, *Duran*, 955 F.3d at 281 n.5 (collecting circuit-level cases).  The Second and Ninth Circuits adopted a broad interpretation, straying from the statutory definition to create their own, and concluded that a system that can

---

[2] *See, e.g.*, *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, et al., Declaratory Ruling and Order*, 30 FCC Rcd. 7961, 7972-73 (2015); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 23 FCC Rcd. 559, 566 (2008); *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 18 FCC Rcd. 14014, 14017 (2003).

[3] *ACA Int'l*, 885 F.3d at 702 (D.C. Cir. 2018) (holding FCC's 2015 Order's interpretation of ATDS was "unreasonably, and impermissibly, expansive" and that the "Commission reaffirmed its 2003 ruling insofar as that order had found predictive dialers to qualify as ATDSs."); *see also id.* at 702 ("We must therefore set aside the Commission's treatment of those matters," including the "lack of clarity about which functions qualify a device as an autodialer").

simply "make calls from stored lists" qualifies as an ATDS.  *See id.* at 287; *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (expressly rejecting "a straightforward interpretation based on the plain language" of the TCPA).  The Third, Seventh, and Eleventh Circuits have held otherwise and adopted the statutory definition of an ATDS, holding that equipment must employ a "random or sequential number generator" to qualify as an ATDS. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020) (rejecting *Marks*'s interpretations of ATDS, which involved "a significant judicial rewrite" of the statute); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1311-12 (11th Cir. 2020) (Ninth Circuit's reading of the statute "looks more like surgery . . . than interpretation"); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) ("key" question is whether the equipment used "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers").[4]  Thus, a majority of the Circuits reject the position adopted by this Circuit and adhere to the statutory definition of ATDS.  And now the Supreme Court will resolve the ever-widening Circuit split and rule on what technology constitutes an ATDS after *ACA Int'l*. Proceeding in the current unsettled legal landscape, before the Supreme Court weighs in, has real world consequences, as there is no statutory cap on damages under the TCPA, so it can and has led to ruinous, company-ending liability for defendants to the tune of many hundreds of millions of dollars (as well as crushing defense costs).  *See, e.g.*, *McMillion, et al. v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

---

[4]  Other lower courts outside of the above-referenced Circuits have issued more than seven different conclusions on what constitutes an ATDS, although the district courts have been trending toward a narrower definition that adheres to the language of the statute.  *See, e.g.*, Dkt 28 at 4 n. 4 (collecting cases).

**B.      The Supreme Court Will Imminently Issue a Ruling Defining the Scope of an ATDS.**

This uncertainty will soon no longer exist, as the Supreme Court is set to rule on the definition of an ATDS in *Facebook*.  In *Facebook*, the lower court granted the defendant's motion to dismiss, holding that the plaintiff failed to meet his burden to properly plead that he received text messages from a device with "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."  *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5-6 (N.D. Cal. Mar. 24, 2016).  In doing so, the lower court focused on the plaintiff's allegations suggesting that "Facebook's login notification text messages [we]re targeted to specific phone numbers and [we]re triggered by attempts to log in to Facebook accounts associated with those phone numbers."  *Id.* at *5.  The Ninth Circuit reversed, holding that "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'"  *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019) (reaffirming its decision in *Marks* that a system sending messages to a list of stored numbers is an ATDS).  The defendant then appealed to the Supreme Court to resolve the Circuit split over the issue of whether "the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'"  RJN, Ex. C (Supp. Br. For Pet'r, *Facebook*, No. 19-511 (filed July 7, 2020) (renewing request for review following *AAPC*)) & Ex. A (Pet. for Writ of Cert, *Facebook*, No. 19-511 (filed Oct. 17, 2019)); *see also* Order, *Facebook*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020).  Thus, in *Facebook*, the Supreme Court is set to review the proper definition of ATDS.  And it is set to do so in short order, as the case is part of the Supreme Court's October 2020 Term, with the opening brief to be filed before Labor Day and oral argument likely to be scheduled for the fall of 2020.

Order, *Facebook*, No. 19-511 (U.S. July 24, 2020) (opening brief due September 4, 2020).

**C.    The Forthcoming Supreme Court Ruling Defining the Scope of an ATDS Could Extinguish Plaintiff's Claims and Dispose of this Action.**

While it is not certain how the Supreme Court will interpret "ATDS" in the forthcoming decision, it is material to this case, will be binding, and will either resolve or fundamentally shape this litigation.  For example, the textualist Supreme Court could rule in line with the majority of Circuit courts and hold that an ATDS means exactly what the statute says: a system that employs a random or sequential number generator.  If that occurs, the Second and Ninth Circuit rulings—that equipment is an ATDS if it simply stores numbers to be called and then calls them—will fall.  And the calling system here will not qualify as an ATDS, under Plaintiff's own pleading and the actual facts.  As to Plaintiff's pleading, he alleges that Signpost's system is an ATDS because it used "a pre-loaded list of telephone numbers," which was "then automatically dialed in sequence," which is not an ATDS under the textual interpretation of the statute. Dkt. 26, ¶¶ 36-37.  And as to the actual facts, Signpost did not place any of the calls referenced in the Amended Complaint with a system that stored or produced telephone numbers to be called, using a random or sequential number generator, and dialed such numbers.  Dkt. 29, ¶ 3.  Instead, like the messages in *Facebook*, the system was used to target specific individuals at specific phone numbers for specific business purposes.  Dkt. 29, ¶ 4.  Thus, the Supreme Court's forthcoming decision will likely dispose of this action.  And even in the unlikely event it does not, it will materially shape and substantially streamline this case, including fact and expert discovery and related motion practice.

**D.    The Court Should Continue the Stay Pending the Supreme Court's Forthcoming Ruling on the Central and Dispositive ATDS Issue.**

Given the above, the Court should continue the stay of this case pending the Supreme Court's forthcoming ATDS decision.  The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time

and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Thus, a district court "has broad discretion to stay proceedings as an incident to its power to control

its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  In this Circuit, the "decision whether

to stay an action calls on a district court's 'studied judgment,' requiring the court to examine 'the

particular facts before it' and determine 'the extent to which . . . a stay would work a hardship,

inequity, or injustice to a party, the public or the court.'"  *Range v. 480-486 Broadway, LLC*, 810

F.3d 108, 113 (2d Cir. 2015) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83,

99 (2d Cir. 2012)).  In making this determination, courts in this Circuit consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil
> litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private
> interests of and burden on the defendants; (3) the interests of the courts; (4) the
> interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (cits. omitted); *see also* Dkt. 41 at

4.

Applying these factors under the *Landis* doctrine, courts within this Circuit, including this

Court, routinely stay proceedings "when a higher court is close to settling an important issue of

law bearing on the action."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012);

Dkt. 41 at 5-6 (staying case pending decision from Supreme Court); *In re Literary Works in Elec.

Databases Copyright Litig*., No. 00-cv-6049, 2001 WL 204212, at * 3 (S.D.N.Y. Mar. 1, 2001)

(granting stay where forthcoming Supreme Court decision was "likely to have a significant, if not

dispositive, impact"); *Jugmohan v. Zola*, No. 98-CV-1509, 2000 WL 222186, at *5 (S.D.N.Y. Feb.

25, 2000) (postponing case "pending an upcoming decision by the United States Supreme Court

is a practice exercised by the Second Circuit in the interest of judicial economy"); *see also DiStasio

v. Edible Arrangements, LLC*, No. 3:16-CV-538-DJS (D. Conn. Jan. 24, 2020) (staying action

pending Second Circuit's ATDS ruling); *Acton v. Intellectual Capital Mgmt., Inc*., No. 15-CV-

4004, 2015 WL 9462110, at *2 (E.D.N.Y. Dec. 28, 2015) (staying TCPA case pending outcome of Supreme Court and D.C. Circuit appeals, including *ACA Int'l*); *Ruggieri v. Boehringer Ingelheim Pharm., Inc*., No. 06-CV-1985, 2012 WL 1521850, at *1 (D. Conn. Feb. 24, 2012) (staying proceeding pending Supreme Court ruling that would "conclude this case").

Indeed, even in the few weeks since the Supreme Court granted certiorari in *Facebook* on July 9, many courts have already stayed actions pending a ruling in that case for this very reason. *See*, *e.g.*, *Runyon v. Everquote, Inc.*, 1:20-cv-012060-RM-STV (D. Colo. July 23, 2020) (staying case pending Supreme Court's decision in *Facebook*); *Beal v. Outfield Brew House, LLC*, No. 20-1961 (8th Cir. July 14, 2020) (same); *Hoffman v. Jelly Belly Candy Co.*, No. 2:19-CV-01935-JAM-DB (E.D. Cal. July 17, 2020) (same); *Young v. Bank of Am. N.A.*, No. 4:19-CV-03867-JST (N.D. Cal., July 15, 2020) (same); *May v. Whatsapp, Inc.*, No. 4:20-CV-659 (N.D. Cal. July 15, 2020) (same); *Rossano v. Fashion Mktg. and Merch. Grp., Inc.,* No. 2:19-CV-10523 (C.D. Cal. July 14, 2020) (same); *Sensibaugh v. EF Educ. First, Inc.*, No. 2:20-CV-01068-MWF-PVC (C.D. Cal. July 14, 2020) (same).

There is no reason why this Court should not also similarly stay this action.  The highest court in the land is close to settling an important and dispositive issue of law on which this case turns and that will potentially conclude this case.  Should that ruling establish that Signpost's system is not an ATDS, Plaintiff's claim will fail.  And a stay would not work to any injustice or hardship on any party.  As to the first *Landis* factor, Courts consistently hold that there is no likelihood of damage or harm under this factor merely because the stay could cause a delay to the plaintiff in receiving money damages.  *See*, *e.g.*, *Aerotel, Ltd. v. IDT Corp*., No. 03-CV-6496-RJH-FM, 2003 WL 23100263, at *2 (S.D.N.Y. Dec. 30, 2003) (granting stay and holding no undue prejudice where "suit is largely one for damages"); *see also Compressor Eng'g Corp. v. Thomas*,

No. 10-10059, 2016 WL 438963, at *6 (E.D. Mich. Feb. 3, 2016) (staying action based on Supreme Court's TCPA decision where plaintiff claimed to have suffered emotional distress as result of calls, noting "that a stay in this action is not likely to prejudice or harm Plaintiff").  The same is true for passing, conclusory requests to generally prohibit violations of the TCPA.  Dkt. 24, ¶ 97; *Whittaker v. All Reverse Mortg*., No. 20-CV-08016, 2020 WL 2829785, at *1 (D. Ariz. May 29, 2020) (staying TCPA case notwithstanding request for injunctive relief); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A*., 630 F. Supp. 2d 295, 307 (S.D.N.Y. 2009) (staying case notwithstanding request for injunctive relief).  Indeed, there is no ongoing harm in this matter as Plaintiff has not received allegedly violative communications for approximately ***one year***, the last of which occurred in ***August 2019***.  Dkt. 41 at 6-7; Dkt. 26, ¶ 68; *see*, *e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015) (granting stay because the harm had ceased, "so there is no need to . . . obtain immediate injunctive relief").  And Signpost already confirmed it is aware of its obligations and instituted a litigation hold to preserve documents that may be relevant to the litigation.  Dkt. 33 at 1; Dkt. 41 at 6.  For these reasons, a stay will not prejudice Plaintiff.

On the other hand, and as to the second and third *Landis* factors, not staying the case would work substantial prejudice on Signpost, as well as this Court.  As this Court has already recognized, "class actions involve the potential for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims.  It is also generally understood that the costs can be particularly enormous for defendants." *Physicians Healthsource, Inc. v. Janssen Pharm., Inc*., No. 12-CV-2132-FLW, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (internal cits. omitted); *see also* Dkt. 41 at 5 (recognizing "interest in avoiding unnecessary litigation, which could be substantial given that the case is asserted as a class action" in granting stay pending Supreme Court's decision

in *AAPC*).  If this case is not stayed, Signpost will have to invest substantial resources litigating this matter—and the Court will have to invest substantial judicial resources—based on the potentially wrong definition of ATDS, in the middle of a pandemic that already caused Signpost to suffer significant financial hardship, lost income, and layoffs of nearly a quarter of its workforce, despite the high possibility that the Supreme Court will render all such investment unnecessary.[5] *See* Declaration of William Foster filed concurrently herewith, at ¶ 3; Dkt. 41 at 5-6 (underscoring importance of stay pending Supreme Court's decision, which could dispose or provide guidance on instant litigation, as well as the difficulties the COVID-19 pandemic has caused); *Ernst v. Dish Network, LLC*, No. 1:12-cv-08794-LGS (S.D.N.Y. Jan. 28, 2016) (staying case pending Supreme Court decision because it impacts "how this case should be managed moving forward"); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying case pending Supreme Court's First Amendment TCPA decision to prevent the defendant from "needlessly spending time and money to comply with [] broad discovery requests"); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (stay pending Supreme Court's First Amendment TCPA decision to "conserve[] precious judicial and case resources and avoid[] unnecessary expenditure of time and money on discovery for a cause of action that may ultimately be invalidated").[6] This is not merely

---

[5]  The parties and the Court will also have to address the complicated constitutionality issue left open by *AAPC* (*see supra*, Section II), which will further waste time, money, and resources as the *Facebook* decision may resolve this case outright.

[6]  *See also*, *e.g.*, *Nakai v. Charter Commc'ns, Inc.*, No. 19-CV-8035-GW-SSX, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) (stay pending Supreme Court's TCPA decision because the defendant would otherwise "be required to spend additional resources defending against this putative nationwide class action that may ultimately be rendered

theoretical, as Plaintiff already served overbroad class discovery that will likely result in discovery disputes this Court will have to police.

In fact, proceeding with this case before the forthcoming rulings would prejudice even Plaintiff because he would incur substantial expense and hassle in individual and class discovery that could end up being for naught.  Thus, incurring the significant costs of class and expert discovery before the law is settled is inequitable and will waste the resources of both the parties and the Court, which will have to expend substantial resources deciding significant motions, analyzing weighty constitutionality arguments, and policing discovery.

As this Court has recognized, as to the fourth and fifth *Landis* factors, a stay would also promote the public interest because the public has a strong interest in the efficient, fair, and uniform administration of the judicial system.  A stay also would promote the interests of non-parties by preventing discovery that would unnecessarily burden them, such as the nation's dozens of cellular carriers—which are often the recipient of burdensome mass-subpoenas in putative TCPA class actions—and ensure a uniform interpretation of the law.  Signpost would also depose putative class members to show that class certification is improper, further burdening non-parties (and non-parties likely want to avoid appearing for a deposition in the middle of a pandemic).  *See*, *e.g*., Dkt. 41 at 5 (third parties also have interest in stay because Supreme Court's decision could moot

---

moot by the decision"); *Figueroa v. Carrington Mortg. Servs. LLC*, No. 8:15-CV-2414-T-24TGW, 2016 WL 718289, at *3 (M.D. Fla. Feb. 22, 2016) (stay of TCPA action pending Supreme Court's decision in part to save "the parties from unnecessary discovery expenses"); *Salvatore v. Microbilt Corp*., 4:14-cv-1848, 2015 WL 5008856, at *2 (M.D. Pa. Aug. 20, 2015) (stay pending Supreme Court decision because "the parties face potential hardship if the stay were denied and the parties were required to expend time and resources engaging in fact and expert discovery" while the decision remains pending).

the need for discovery from them); *Royal Park Inv. SA/NV v. Deutsche Bank Nat'l Tr. Co*., No. 17-CV-5916-AJN, 2018 WL 3849840, at \*3 (S.D.N.Y. Aug. 10, 2018) (staying action pending resolution of related case because "the public is also not served by any wasting of judicial resources"); *Nuccio v. Duve*, No. 7:13-CV-1556-MAD-TWD, 2015 WL 1189617, at \*5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action [pending the outcome of a district court action involving similar issues] will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources and 'minimiz[ing] the possibility of conflicts between different courts . . . .'"). Thus, by "conserving judicial resources, a stay will serve not only the interest of the courts, but also the interests of the [p]arties, the nonparties, and the public in 'an orderly and efficient use of judicial resources.'" *Catskill*, 630 F. Supp. 2d at 306. The balance of the equities strongly favors granting this motion and staying this action.

### E.    Plaintiff's Internal Do-Not-Call "Claim" Does Not Change this Analysis.

Although Plaintiff added a new internal do-not-call "claim" to his Amended Complaint, it does not change this analysis for reasons previously discussed in Signpost's initial motion to stay and reply papers. *See* Dkt. 28 at 15-17; Dkt. 32 at 6-7; *see also* Dkt. 41 at 7 (staying Plaintiff's ATDS claim *and* "do not call" provision claim pending decision in *AAPC*). To reiterate, after Signpost conveyed it would initially move to stay this case, Plaintiff amended his pleading to add an internal do-not-call "claim," in an obvious but ill-conceived attempt to thwart that motion. Dkt. 28 at 15; Dkt. 26, ¶¶ 99-102. In that claim, Plaintiff alleges that Signpost made calls without "a written policy pertaining to 'do-not-call' requests," training its personnel on such policy, or recording such requests. *Id*. This new claim is subject to dismissal—as Plaintiff previously failed to rebut—for at least four reasons. Dkt. 28 at 15-17; Dkt. 32 at 6-7.

First, there is no private right of action for internal do-not-call policy violations.  *See*, *e.g.*, *Wilson v. PH Phase One Operations L.P.*, No. 18-3285-DKC, 2019 WL 4735483, at *6 (D. Md. Sept. 27, 2019) (dismissing plaintiff's claim under § 64.1200(d) because regulation promulgated under § 227(d), not § 227(c), so no private right of action for such a claim).[7]  Second, at the time of the calls alleged in the Amended Complaint, Signpost in fact had internal do-not-call procedures, including a written policy for maintaining an internal do-not-call list, training personnel on the do-not-call list, and recording internal do-not-call requests, despite Plaintiff's bald and false allegations to the contrary.  Dkt. 29, ¶ 5.  Third, Plaintiff *does not even allege* that he made any do-not-call request or demanded any such policy.  *See generally* Dkt. 26.  As such, any failure to maintain a list or policy cannot be fairly traceable to any calls made to Plaintiff. Plaintiff therefore lacks standing (and a good-faith basis) to bring any internal do-not-call policy claim here, as the Eleventh Circuit recently held in a published decision.  *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who *never* said to Telecel they didn't want to be called again. These plaintiffs therefore would lack Article III standing to sue.") (emphasis in original).  Fourth, the regulation under which Plaintiff brings his new "claim" applies to "residential" numbers, and Plaintiff does not even allege that his purported cellular telephone number is not used for a business purpose.  Nor can he, as he

---

[7] *See also*, *e.g.*, *Braver v. NorthStar Alarm Serv., LLC*, No. 17-0383, 2019 WL 3208651, at *14-15 (W.D. Okla. July 16, 2019) (same, and granting defendant's summary judgment motion); *Burdge v. Ass'n Health Care Mgmt. Inc.*, No. 1:10-cv-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (holding no private right of action under § 64.1200(d), which "are technical and procedural in nature and were promulgated pursuant to [47 U.S.C. §] 227(d)").

holds his number out online as his business number—which is also fatal to his claim.  47 C.F.R. § 64.1200(d)(3) & (e) (protection only applicable to "residential" subscribers); Dkt. 30.

Even if Plaintiff's new "claim" could somehow survive, it would not justify moving forward with burdensome and expensive class discovery here, where the Supreme Court will soon issue a ruling that will likely moot Plaintiff's ATDS claim.  *See Calhoun v. FLRish, Inc.*, No. 3:19-CV-08212 (N.D. Cal. May 13, 2020) (staying case because forthcoming Supreme Court decision could "eliminate one of the two claims in this case, would likely substantially limit the number of putative class members, and could meaningfully limit the scope of discovery"); *Boger*, 2020 WL 1939702, at *1 (staying case notwithstanding do-not-call claim because forthcoming Supreme Court decision may alter the TCPA).[8]

## IV.   CONCLUSION

For the foregoing reasons, Signpost respectfully asks the Court to continue the stay of these proceedings pending the forthcoming ATDS decision by the Supreme Court.

Dated: July 27, 2020

*/s/ Kristapor Vartanian*
Michael D. Kabat
New York Bar No. 836784
Ryan D. Watstein
*Admitted Pro Hac Vice*

---

[8] *See also Seefeldt v. Entm't Consulting Int'l, LLC*, No. 4:19-CV-00188, 2020 WL 905844, at *3 (E.D. Mo. Feb. 25, 2020) (*Landis* "rubric favors a stay for the benefit of both parties, as well as this Court" despite do-not-call claim); *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 5513638, at *1 (S.D.N.Y. Nov. 17, 2017) (granting stay pending *ACA Int'l* opinion notwithstanding pre-recorded voice claims); *Reynolds v. Time Warner Cable, Inc.*, No. 16-CV-6165-W, 2017 WL 362025, at *1 (W.D.N.Y. Jan. 25, 2017) (same); *Telstar Res. Grp., Inc. v. MCI, Inc.*, 476 F. Supp. 2d 261, 275 (S.D.N.Y. 2007) (Koeltl, J.) ("[I]f plaintiff amended this claim, it would also be stayed pending the [FCC's] consideration of the issues raised in the first claim").

**KABAT CHAPMAN & OZMER LLP**
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Phone: (404) 400-7300
Fax: (404) 400-7333
mkabat@kcozlaw.com
rwatstein@kcozlaw.com

Kristapor Vartanian
*Admitted Pro Hac Vice*
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Avenue, Suite 2225
Los Angeles, California 90071
Phone: (213) 493-3980
Fax: (404) 400-7333
kvartanian@kcozlaw.com

17

**CERTIFICATION OF WORD COUNT**

**(Hon. John G. Koeltl's Individual Practices, Section 2.D)**

Pursuant to Judge Koeltl's Individual Practices § 2.D, I hereby certify that the foregoing Memoranda of Law contains fewer than 7,000 words.  I relied on the word count of the word-processing system used to prepare the brief.  This brief contains 5,521 words, excluding the portions exempted by the Individual Practices § 2.D.  The foregoing Memoranda of Law also complies with the formatting rules detailed in the Individual Practices.

Dated: July 27, 2020.

/s/ Kristapor Vartanian
Kristapor Vartanian

**CERTIFICATE OF SERVICE**

I, Kristapor Vartanian, an attorney, hereby certify that on July 27, 2020, I caused the above and foregoing papers to be served upon counsel of record (inclusive of the Notice of Motion, Declaration of William Foster, and Request for Judicial Notice and accompanying exhibits) by filing such papers via the Court's ECF system.

/s/ Kristapor Vartanian
Kristapor Vartanian

19